**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of an *ex parte* Petition for Judicial Assistance Pursuant to 28 U.S.C. § 1782, by<br><br>SIMETRA GLOBAL ASSETS LIMITED AND RICHCROFT INVESTMENTS LIMITED,<br><br>Petitioners,<br><br>In support of legal proceedings pending in the High Court of Justice, Queen's Bench Division, Commercial Court, Royal Courts of Justice, London, England. | Civil Action No. 16-2389 (JLL) (JAD)<br><br>**OPINION AND ORDER ON *EX PARTE* PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 1782** |

### JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon an ex parte petition by Simetra Global Assets Limited and Richcroft Investments Limited ("Petitioners") for an Order, pursuant to 28 U.S.C. § 1782, authorizing the issuance of subpoenas, directed to New Jersey resident Diwakar Jagganath, "for the collection of evidence to be used in the prosecution of a lawsuit currently pending before the High Court of Justice, Queen's Bench Division, Commercial Court, Royal Courts of Justice, London, England [(the "London Action")]." (Petitioner's Br. at 1, ECF No. 1-6). Both petitioners are Plaintiffs in the London Action, and Mr. Jagganath is a defendant in that proceeding. For the reasons set forth below, Petitioners' application is **GRANTED**.[1]

---

[1] Given the ex parte nature of Petitioners' application, the Court makes no explicit ruling with respect to whether Petitioners' request is reasonable in scope. The Court notes, however, that ex parte applications are frequently granted under 28 U.S.C. § 1782 "where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by

I. **RELEVANT BACKGROUND**

Petitioners are private closed currency funds with their principal places of business in the British Virgin Islands. (Decl. of Linos Choo ("Choo Decl.") ¶¶ 5-6, ECF No. 1-3). Their "investment objective is to make money by trading in the foreign exchange markets." (Id. ¶ 16). Petitioners represent that "[a]t all material times, [their] assets were under the control of Daskaleas, whose companies Simetra Management and Richcroft Management were appointed as Investment Managers to the Petitioners, and/or GStar, which acted as broker to the Petitioners." (Id. ¶ 17). Daskaleas and Gstar were also "trustees and in possession or control of certain of Petitioners' assets and property." (Id. ¶ 18). Daskaleas and GStar are both defendants in the London Action. (Id. ¶¶ 11-12). Petitioners claim that Defendant Daskaleas advised them that the Petitioners' money contained in accounts operated by GStar was actually held by Defendant Ikon Finance, "which provided GStar with back office functions." (Id. ¶ 21).

Petitioners claim that "[i]n the summer of 2014, [they] asked for an accounting of the money held under the control of Daskaleas and GStar", (id. ¶ 22), and that those entities arranged for an audit. (Id.). Ikon Atlantic (another defendant in the London Action), through letters signed by Defendant Yikilmazaoglu, provided the auditors with certain information regarding Petitioners' accounts. (Id.). Petitioners contend that the information contained in those letters was false. (Id. ¶ 23).

Petitioners further represent that "[o]n February 26, 2015, in response to Petitioners' request to withdraw the funds they had entrusted to GStar[,] Ikon Finance, and other entities

---

the application." In re Application of Mesa Power Group, LLC, No. 11-MC-280 (ES), 2012 WL 6060941 at *4 (D.N.J. Nov. 20, 2012). Moreover, once Petitioners serve the subpoenas, Mr. Jagganath will have the opportunity to move to quash or modify the subpoenas under Federal Rule of Civil Procedure 45.

affiliated with Ikon Group and Yikilmazaoglu, Defendant Jagganath wrote to the Petitioners seeking to prevent any request to transfer money out of the accounts. In particular, Jagganath wrote Petitioners' requests 'are not in line with the normal operations of a close end fund of your size.'" (Id. ¶ 24). They claim that Mr. Jagganath wrote another letter on May 7, 2015, "falsely purporting to confirm outstanding balances on" certain of Petitioners accounts, and making false statements about the availability of funds in those accounts. (Id. ¶ 26).

In late May 2015, Petitioners wrote letters to several of the defendants requesting, among other things, that those defendants undertake certain specific actions with regard to Petitioners' accounts. (Id. ¶¶ 27-30). In response to one of those requests, Defendant Ikon Finance provided a computer file purporting to contain information regarding certain of Petitioners' accounts, though Petitioners question the authenticity of that information. (Id. ¶ 32). Petitioners obtained other information suggesting that their accounts had a "nil balance" or simply did not exist. (Id. ¶¶ 33-34). Petitioners allege that, "[t]o date, Defendants have refused to return Petitioners' money, despite repeated requests to do so." (Id. ¶ 35).

Based on the foregoing, Petitioners commenced the London Action, which they describe as follows: "Petitioners' primary case in the [London Action] is that Ikon Finance and/or GStar misappropriated Petitioners' funds that were held in accounts owned or controlled by Ikon Finance, GStar and/or Daskaleas. In addition, [Defendants provided written statements containing false or misleading information]", and have failed to honor requests to return Petitioners money. (Id. ¶ 39). Petitioners contend that "Diwakar Jagannath will most likely have information critical to support Petitioners' allegations in the [London Action] because Mr. Jagannath has acted variously for Ikon Finance, Ikon Group and Ftechnics and is likely to have knowledge and documents with respect to the written information, confirmations and/or verifications provided to

Petitioners that were false and misleading. This information will enable Petitioners to prove their allegations against the Defendants in the London Proceeding." (Id. ¶ 39).

Though Petitioners have named Mr. Jagganath as a defendant in the London Action, Mr. Jagganath has proven elusive and difficult to find. (Id. ¶¶ 41-42). Petitioners recently effectuated service upon Mr. Jagganath with regard to the London Action, but fear he "may now leave the jurisdiction and once again become untraceable for months." (Id. ¶ 42). Petitioners contend that, though Mr. Jagganath would ordinarily be required to disclose documents in the context of the London Action, the English Court's ability to compel him to do so hinges on Petitioners' ability to locate and serve him in the future. (Id. ¶ 43). Petitioners therefore seek leave to serve Mr. Jagganath with subpoenas compelling him to produce documents and provide testimony in connection with the London Action. (Id. ¶ 44). Petitioners provided the Court with copies of their proposed subpoenas as attachments to their application. (ECF Nos. 1-1, 1-2).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1782(a), "[t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced before a person appointed by the court." A district court is authorized to grant an application under § 1782 if the following three statutory requirements are met:

> (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person.

In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006).

If the statutory requirements are met, a district court may, in its discretion, grant the application. The Supreme Court has identified four discretionary factors that the district court may consider when ruling on a § 1782(a) request:

> (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character or the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign county or the United States; and (4) whether the § 1782 application contains unduly intrusive or burdensome discovery requests.

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).

### III. LEGAL DISCUSSION

#### a. Statutory Factors

The Court finds that Petitioner's application satisfies each of the statutory requirements set forth in 28 U.S.C. § 1782. First, Petitioners' counsel has submitted a declaration stating, under penalty of perjury, his understanding that Mr. Jagganath currently resides within this judicial district. (Choo Decl. ¶ 13, ECF No. 1-3).

Second, Petitioners seek the discovery at issue for use in a civil proceeding "currently pending before the High Court of Justice, Queen's Bench Division, Commercial Court, Royal Courts of Justice" in London, England. (Id. ¶ 1). The Court finds that this satisfies § 1782's "foreign tribunal" requirement. See 28 U.S.C. § 1782 ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation"); Intel Corp., 542 U.S. at 249

("Congress introduced the word 'tribunal' to ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings'").

Finally, Petitioners are plaintiffs in the London Action, and therefore qualify as interested persons under 28 U.S.C. § 1782. See Intel Corp., 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

### b. Discretionary Factors

As Petitioners have established that their application satisfies each of the statutory factors established in 28 U.S.C. § 1782, the Court will now turn to the four discretionary factors that the Supreme Court discussed in Intel Corp., 542 U.S. at 247. The Court will consider each of those factors in turn.

#### i. Jurisdictional Reach of the Foreign Tribunal

The United States Supreme Court has recognized:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

Intel Corp., 542 U.S. at 244. Here, Petitioners acknowledge that they have named Mr. Jagganath as a defendant in the London Action and that they recently effectuated service upon him with regard to that case. (Choo Decl. ¶¶ 13, 42, ECF No. 1-3). Petitioners further acknowledge that, as a party to the London Action, Mr. Jagganath would be required to disclose documents "in the ordinary course of litigation" in that matter. (Id. ¶ 43). Petitioners contend, however, that Mr.

Jagganath is a "flight risk," and "given his conduct to date is likely to disappear making further contact with him impossible and therefore rendering the powers of the English Court 'moot' in circumstances of an unlocatable Defendant." (Id ¶ 43). It is not readily apparent, and Petitioners have not explained, how that situation might be different if the United States District Court, as opposed to the English Court, orders production. The Court finds that, based on the argument Petitioners have articulated here, this discretionary factor weighs against granting their application.

### ii. Nature and Receptivity of the Foreign Tribunal

Under the second discretionary factor, "a court presented with a § 1782(a) request may consider the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance." Intel Corp., 542 U.S. at 244. It appears that the London Action is a civil proceeding being litigated in a traditional court. There is no evidence suggesting whether or not the English Court would be receptive to the United States District Court's assistance in collecting evidence for use in the London Action. The Court notes, however, that "[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence." Gov't of Ghana v. ProEnergy Servs. LLC, No. 11-9002, 2011 WL 2652755, at *4 (W.D. Mo. June 6, 2011) (citing Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099–1100 (2d. Cir.1995) ("[W]e believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782"). Based on the evidence before this Court, there is no indication that the English Court would reject the evidence that Petitioners seek to elicit from Mr. Jagganath. This discretionary factor therefore weighs in favor of granting Petitioners' application.

### iii. Attempt to Circumvent Foreign Restrictions on Evidence Gathering

The third discretionary factor requires the Court to examine "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States." Intel, 542 U.S. at 244-45. There is nothing to suggest that Petitioner's application herein is an attempt to circumvent any proof-gathering restrictions. Indeed, Petitioners' London-based counsel has represented that he is "unaware of any law or rule of court in England that would prohibit Petitioners from seeking evidence in the United States or elsewhere in support of their claim before the English Court." (Choo Decl. ¶ 37). Moreover, Petitioners seek to require Mr. Jagganath to produce documents and appear for a deposition, and both of those discovery mechanisms are expressly permitted under the Federal Rules of Civil Procedure, so there is no danger that Petitioners' request might run afoul of the United States' discovery policies. The Court therefore finds that this factor weighs in favor of granting Petitioner's application.

### iv. Whether the Requests Are Unduly Intrusive or Burdensome

Under the final discretionary factor, the Court must consider whether the discovery sought is unduly intrusive or burdensome. While the Court is not making a definitive finding on this point, Petitioners' proposed subpoenas, (ECF Nos. 1-1 and 1-2), appear to be neither. Nevertheless, because Petitioners made this application ex parte, the Court is without sufficient information to evaluate whether the discovery they seek is unduly intrusive or burdensome to Mr. Jagganath. Once Petitioners serve the requested subpoenas, Mr. Jagganath will have the opportunity to seek an Order from this Court modifying or quashing the subpoenas. The Court therefore finds that this factor weighs in favor of granting Petitioners' application.

The Court further finds that, on balance, the discretionary factors that the Supreme Court articulated in in <u>Intel Corp.</u>, 542 U.S. at 247, weigh in favor of granting Petitioners' application.

## IV.   CONCLUSION AND ORDER

Based on the foregoing findings that Petitioners' application satisfies both the relevant statutory and discretionary factors;

IT IS on this 25th day of May, 2016,

**ORDERED** that Petitioners' application for discovery pursuant to 28 U.S.C. § 1782, (ECF No. 1), is **GRANTED**; and it is further

**ORDERED** that Petitioners may serve Mr. Jagganath with copies of the subpoenas attached to their application as ECF Nos. 1-1 and 1-2 (with the dates of issuance and deadlines for compliance adjusted as necessary), as well as a copy of this Opinion and Order; and it is further

**ORDERED** that nothing in this Opinion and Order shall be construed as limiting Mr. Jagganath's right to challenge those subpoenas pursuant to Federal Rule of Civil Procedure 45.

**SO ORDERED**

_____
JOSEPH A. DICKSON, U.S.M.J.

cc:   Hon. Esther Salas, U.S.D.J.